**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| LUKE HARTSOCK, individually and on behalf of all other similarly situated persons,<br><br>                     Plaintiff,<br><br>   v.<br><br>WELLS FARGO & COMPANY; WELLS FARGO BANK, N.A.; and EARLY WARNING SERVICES, LLC d/b/a ZELLE,<br><br>                    Defendants. | No.<br><br>**COMPLAINT—CLASS ACTION**<br><br>1) VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT ("EFTA"), 15 U.S.C §§ 1693, *ET SEQ*.;<br>2) VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT;<br>3) NEGLIGENCE; AND<br>4) UNJUST ENRICHMENT<br><br>**JURY TRIAL DEMANDED** |

      Plaintiff Luke Hartsock ("Plaintiff") brings this Complaint, by and through his attorneys and on behalf of all others similarly situated, against Defendants Wells Fargo & Company ("WFC"); Wells Fargo Bank, N.A. ("Wells Fargo Bank"); and Early Warning Services, LLC d/b/a Zelle ("Zelle") (collectively, "Defendants") and alleges upon information and belief as follows:

COMPLAINT—CLASS ACTION - 1

# I.    INTRODUCTION

1.    Plaintiff is a victim of a scam by an unknown party targeting Wells Fargo Bank customers in connection with the Wells Fargo/Zelle mobile app, resulting in $7,500 being debited from Plaintiff's checking and savings accounts without Plaintiff's authorization.

2.    This type of Zelle scam is well-known to Defendants. Indeed, Defendant Early Warning Services, LLC is owned by banks, including Defendant Wells Fargo & Company, Bank of America, Trust, Capital One, JPMorgan Chase, PNC Bank, and US Bank. However, because it would be costly to them, Defendants have not taken appropriate steps to protect consumers, including Plaintiff, from such scams, which often result in losses of thousands of dollars to individual consumers and customers of Wells Fargo Bank.

3.    In enacting the Electronic Fund Transfer Act ("EFTA"), Congress found that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. 15 U.S.C. § 1693(a). Congress' purpose in enacting the EFTA was to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." *Id.* § 1693(b). "The primary objective of [the EFTA] is the provision of individual consumer rights." *Id.* Plaintiff files this lawsuit on behalf of himself and other consumers to vindicate their rights, and because Plaintiff should not be left "holding the bag" for unauthorized transactions Defendants are obligated to prevent and remedy.

# II.    JURISIDICTION AND VENUE

4.    Original subject matter jurisdiction is valid in this district pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law under the EFTA, 15 U.S.C. §§ 1693, *et seq*. Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331 and 1367 for supplemental jurisdiction over the Washington statutory and common law claims arising from the same or substantially similar transactions that form the basis of the EFTA claim.

5.    The Court also has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (i) there is minimal diversity; (ii) Defendants are not government

COMPLAINT—CLASS ACTION - 2

entities against whom the District Court may be foreclosed from ordering relief; (iii) there are more than one hundred (100) people in the putative classes; and (iv) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

6.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because: (1) Defendants transact business within this judicial district and because at all relevant times Plaintiff resided in Seattle, Washington, such that a substantial part of the events giving rise to Plaintiff's causes of action against Defendants occurred while Plaintiff resided in this judicial district, the United States District Court for the Western District of Washington; and (2) Defendants' contacts with this judicial district are sufficient to subject them to its personal jurisdiction.

### III.    PARTIES

7.    Plaintiff is a natural person, and a citizen and resident of Seattle, Washington, which is in King County.

8.    Wells Fargo & Company ("WFC") is a diversified financial services company headquartered in San Francisco, California that provides banking, insurance, investments, mortgage banking, and consumer finance through banking stores, the internet, and other distribution channels to customers, businesses, and other institutions in all 50 states and in other countries.

9.    WFC exercises specific and financial control over the operations of Defendant Wells Fargo Bank, dictates the policies, procedures, and practices of Wells Fargo Bank, exercises power and control over the specific activities upon which the claims herein are based, and is the ultimate recipient of the unreimbursed transactions described herein.

10.    Wells Fargo Bank is a national bank association chartered under the laws of the United States, with its primary place of business in Sioux Falls, South Dakota. Wells Fargo Bank provides WFC personal and commercial banking services and is WFC's principal subsidiary.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

11.     Early Warning Services, LLC d/b/a Zelle is a limited liability company established under the laws of Delaware with its principal place of business in the State of Arizona.

12.     Zelle is a peer-to-peer ("P2P") instant payment services business owned by seven large banks in the United States, including WFC. Zelle was created to save the participating banks money by minimizing the fees the banks are charged for competitor P2P payment transactions.

13.     Zelle makes money by facilitating payments with participating banks, including Wells Fargo Bank.

## IV.     BACKGROUND ON ZELLE SCAMS

14.     Created and owned by America's largest banks[1] to enable digital money transfers, Zelle comes embedded in banking apps and is now America's most widely used money transfer service, outpacing its closest rival (Venmo) with $260 billion in transfers in 2021.[2]

15.     During 2020, an estimated 18 million Americans were defrauded through P2P payment apps, including Zelle.[3]

16.     It is free to sign up with Zelle, and Zelle is integrated into the websites and mobile app of Wells Fargo Bank.

17.     While Zelle provides a link to what it calls a "User Agreement" on its website, at no time was the Plaintiff made aware of this agreement.

18.     Zelle users can send money to other registered Zelle users. They can also attempt to send money to unregistered recipients, in which case the intended recipient will receive an invitation to sign up for the service in order to complete the transaction. Users access the Zelle

---

[1] Bank of America, Capital One, JPMorgan Chase, PNC Bank, Trust, U.S. Bank, BB&T (Truist), and Wells Fargo.
[2] Cowley, Stacey, and Nguyen, Lananh, "Fraud is Flourishing on Zelle. The Banks Say It's Not Their Problem." Available online, https://www.nytimes.com/2022/03/06/business/payments-fraud-zelle-banks.html (last visited April 7, 2022).
[3] *Id.*

COMPLAINT—CLASS ACTION - 4

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

network within the websites, through the Zelle mobile app, or through apps of Zelle-participating U.S. financial institutions.[4]

19.     Zelle is marketed as a fast, safe, and easy way to send and receive money.

20.     The immediacy of Zelle's service has made it a favorite primarily among consumers, but that has made it a favorite among criminals as well, who can access bank accounts directly, unlike with similar P2P platforms.[5] Once scammers can scare or trick their victims into sending money via Zelle, "they can siphon away thousands of dollars in seconds."[6]

21.     Nowhere in Zelle's marketing does Zelle warn potential users of the risks of being scammed by persons impersonating their banks. Consumers are not aware that transactions with Zelle differ from other similar platforms.

22.     In one instance involving a consumer who called Wells Fargo Bank to report losing $500.00 because of a Zelle scam, the customer service representative indicated that "'[a] lot of people are getting scammed on Zelle this way'" and that "[g]etting ripped off for $500 was 'actually really good,' . . . because 'many people were getting hit for thousands of dollars.'"[7]

23.     Zelle and the banks that own Zelle are aware of the widespread fraud on Zelle but are doing virtually nothing to stop it and doing little to nothing to help consumers get their money back.[8]

24.     Defendants are keenly aware of these scams but have done little to educate consumers about the risks of using Zelle,[9] a privately-owned company in which Defendants have a financial interest.

---

[4] Zelle encourages consumers to "pay it safe" by "look[ing] for Zelle in your banking app[.]" "How to Pay it Safe with Zelle," https://www.zellepay.com/financial-education/pay-it-safe (last accessed April 21, 2022).

[5] *Ibid.*

[6] *Ibid.*

[7] *Ibid.*

[8] *Ibid.*

[9] *Ibid.*

COMPLAINT—CLASS ACTION - 5

**KELLER ROHRBACK L.L.P.**

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

25. Even in Wells Fargo Bank's formal written response to the prevalence of the scams, Wells Fargo Bank claims to be "actively working to raise awareness" by using an "Online Security Center," but its Online Security Center does not even mention Zelle by name.[10]

26. On information and belief, Wells Fargo Bank and WFC use Zelle, which they own, to insulate themselves from financial liability for unauthorized transactions.

27. Recent Consumer Financial Protection Bureau guidance on unauthorized Electronic Funds Transfers ("EFTs") indicates P2P payments are EFTs, such as transactions made with Zelle, and trigger "error resolution obligations" to consumers to protect them from situations where they are fraudulently induced and requested by a third party to provide their account information that results in authorized debits from their accounts.[11]

28. Even so, Defendants have not reversed or refunded all funds of Plaintiff's disputed and unauthorized transactions, though obligated to do so.

29. On information and belief, Wells Fargo Bank does not reimburse consumers for losses from EFTs via Zelle due to fraud, even where the losses are timely reported by consumers.

## V. PLAINTIFF'S FACTUAL ALLEGATIONS

30. Plaintiff is a victim of a sophisticated scam where scammers mimicked Wells Fargo Bank's identity, as well as the means of communication typically used by Wells Fargo Bank to communicate with customers in the event of actual fraud.

31. On or about December 23, 2021, Plaintiff received a text message on his mobile phone informing him that there were unauthorized transactions on his Wells Fargo Bank account and that he should reply "yes" if he wanted to receive a call about it from Wells Fargo Bank.

---

[10] "'Kicked Me in My Gut': Multiple People Say They Were Scammed Through Zelle App," https://www.wsoctv.com/news/local/kicked-me-my-gut-eight-people-fall-zelle-scam-less-than-2-weeks/ODQAUJXTTRE6RCECSWZRAVSLQE/ (last accessed April 21, 2022), linking to the "Online Security Center" at, "Bank Imposter Scam," https://www.wellsfargo.com/privacy-security/fraud/bank-scams/bank-imposter (last accessed April 21, 2022).

[11] "Electronic Fund Transfers FAQs," Consumer Financial Protection Bureau, https://www.consumerfinance.gov/compliance/compliance-resources/deposit-accounts-resources/electronic-fund-transfers/electronic-fund-transfers-faqs/#financial-institutions-2 (last accessed April 21, 2022).

COMPLAINT—CLASS ACTION - 6

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

32.     Soon after responding "yes" to that text message, Plaintiff received a phone call on his same mobile phone from a phone number identified on his Caller ID as Wells Fargo Bank.

33.     Plaintiff answered the phone, and a person purporting to be a customer service representative from the Wells Fargo Bank Fraud Department indicated that she was calling Plaintiff to confirm possible suspicious transactions on Plaintiff's Wells Fargo Bank account.

34.     The purported representative instructed Plaintiff that he needed to use the Wells Fargo app, and its Zelle function specifically, to delete and then re-add and pay himself as a Zelle payee. By doing so, she said, this would confirm his identity and lock out the scammer from accessing his Wells Fargo Bank account.

35.     During this process, Wells Fargo Bank sent Plaintiff's cellphone a "Verification code" text message that the purported representative fraudulently induced Plaintiff to confirm with her as a means for Plaintiff to re-add himself as a payee to his Wells Fargo Bank account. She stated that the funds would "clear" and show in Plaintiff's account in the next 24 hours.

36.     Plaintiff's telephonic interaction with the purported Wells Fargo Bank representative and use of the Wells Fargo/Zelle app resulted in $3,500 being sent via Zelle "to himself." In reality, on December 23, 2021, scammers sent money from Plaintiff's Wells Fargo Bank account via Zelle to the scammers' accounts—accounts unknown to Plaintiff.

37.     Plaintiff did not authorize an EFT from his Wells Fargo Bank account on December 23, 2021.

38.     Plaintiff was fraudulently induced by a purported Wells Fargo representative to share a Wells Fargo Bank verification code, which resulted in transfer of funds via Zelle out of Plaintiff's Wells Fargo Bank account.

39.     On December 24, 2021, Plaintiff was again informed by text message from the same phone number from the day prior that there were additional unauthorized transactions on his Wells Fargo Bank account and that he should reply "yes" if he wanted to receive a call about from Wells Fargo Bank.

COMPLAINT—CLASS ACTION - 7

40.     In a second telephonic interaction, on December 24, 2021, Plaintiff again received a call on his cellphone from a phone number identified on his Caller ID as Wells Fargo Bank. Plaintiff immediately raised concerns about the identity of the purported representative from Wells Fargo Bank. The purported Wells Fargo Bank representative told Plaintiff that deleting and then re-adding himself as a payee was the only means to stop the unauthorized transactions and get his money back.

41.     Plaintiff's second telephonic interaction with the purported Wells Fargo representative, again using the Wells Fargo/Zelle app, resulted in $4,000.00 being sent via Zelle "to himself" in multiple transactions. In reality, on December 24, 2021, scammers sent money from Plaintiff's Wells Fargo Bank accounts via Zelle to the scammers' accounts—accounts unknown to Plaintiff.

42.     Plaintiff did not authorize EFTs from his Wells Fargo Bank accounts on December 24, 2021. Plaintiff was induced by a purported Wells Fargo representative to share the Zelle verification codes, which resulted in the transfer of funds via Zelle out of Plaintiff's Wells Fargo Bank accounts.

43.     After Plaintiff realized that he had been scammed, Plaintiff disputed the transactions with Wells Fargo Bank as soon as possible, after the Christmas holiday and weekend, on December 27th and again on December 28th and December 30th. Plaintiff spent multiple hours on the phone with Wells Fargo Bank and was given inconsistent responses to the fraud Plaintiff was attempting to report.

44.     In disputing the transactions, an actual Wells Fargo Bank representative informed Plaintiff that he had been scammed and confirmed that other customers had called with similar concerns. The first Wells Fargo Bank representative Plaintiff spoke to said that the likelihood of the transactions being reversed due to the fraudulent conduct of the scammers was high.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

45.     In a subsequent call, Wells Fargo Bank representatives informed Plaintiff that Wells Fargo Bank would investigate the disputed transactions. But in later conversations, Wells Fargo Bank indicated that it was less likely that the funds would be refunded.

46.     By January 5, 2022, Wells Fargo Bank stated that it had completed its investigations, and informed Plaintiff that it was refusing to refund Plaintiff for any of the unauthorized transactions.

47.     On April 8, 2022, Wells Fargo Bank changed its position as to the December 23, 2021 disputed transaction only, informing Plaintiff of its decision to credit $3,500 back to Plaintiff's Wells Fargo Bank account.

48.     Defendants knew or should have known of the likelihood of this type of scam and its financial detriment to consumers, including Plaintiff.

49.     For each unauthorized transaction, Wells Fargo Bank sent Plaintiff two form letters, identical in substance. The letters were all sent within a day or two of each other.

50.     One letter states:
       Based on the information available to us, we [Wells Fargo Bank] have determined that this payment was processed as requested.  As a courtesy, we will continue to attempt to assist with resolution of this issue with the receiving financial institution. We will notify you by U.S. mail to update you of our findings.

51.     The second letter states:
       Our records indicate that you initiated a Zelle Transfer through your Wells Fargo Online banking session on 12/23/2021 [or 12/24/2021] in the amount of . . .

       As this transfer has already been approved and processed, we are unable to stop or reverse the funds . . .

       We hope this information has been helpful to you[.]

52.     The information was, in fact, *not* helpful to Plaintiff, who has been scammed but is without recourse, which is unlawful.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

53.     Defendants were well-aware of the Zelle scam prior to December of 2021, yet took virtually no steps to protect consumers, or to help scammed consumers, due to Defendants' own financial interests.[12]

54.     As of the date this Complaint was filed, Plaintiff's Wells Fargo Bank checking account has a deficit of $4,000.00.

55.     Plaintiff's cellular telephone number, the use of Wells Fargo Bank and WFC banking services, and login information for the Zelle app are nonpublic personal information and were never shared with the scammers.

## VI.     CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated.

57.     Plaintiff is a member of and seeks to represent a nationwide Class, pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2) and/or (b)(3), defined as:

> All persons within the United States whose bank account with Wells Fargo Bank was debited via one or more transactions using the Zelle mobile application that was not permanently credited by Defendant/s in full within 45 days of a dispute by the customer and/or the consumer's authorized representative concerning the transaction(s).

58.     Additionally, Plaintiff is a member of and seeks to represent a Washington Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2) and/or (b)(3), defined as:

> All persons residing in Washington whose bank account with Wells Fargo Bank was debited via one or more transactions using the Zelle mobile application that was not permanently credited by Defendant/s in full within 45 days of a dispute by the customer and/or the consumer's authorized representative concerning the transaction(s).

59.     Excluded from the Class and Sub-Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Further excluded from

---

[12] *Ibid.*

COMPLAINT—CLASS ACTION - 10

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the Class and Sub-Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

60. Plaintiff reserves the right to modify the proposed class definitions, including but not limited to expanding the class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

61. <u>Numerosity</u>: The members of the Class and Sub-Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class and Sub-Class consists of thousands of individuals nationwide.

62. <u>Commonality</u>: There are questions of law and fact common to the Class and Sub-Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

   a. Whether Plaintiff and the Class lost money that was transferred from their account via Zelle;

   b. Whether Plaintiff and the Class are customers of Wells Fargo Bank at the time of the unauthorized transactions;

   c. Whether Defendants Wells Fargo Bank and WFC violated the EFTA by failing to adequately investigate the unauthorized transactions of Plaintiff and the Class;

   d. Whether Defendants Wells Fargo Bank and WFC violated the EFTA by failing to correct errors on the accounts of Plaintiff and the Class within 45 days of the transactions being disputed;

   e. Whether the transactions at issue were unauthorized EFTs, by way of a third party fraudulently obtaining access to Plaintiff and the class members accounts through fraudulent inducement, making them errors subject to the EFTA's remedial provisions, including Regulation E;

   f. Whether Plaintiff and the Class are entitled to maximum statutory damages, costs, and fees under the EFTA;

   g. Whether the conduct of Wells Fargo Bank and WFC constitutes an "unfair or deceptive act[] or practice[]" as that term is defined in the Washington Consumer Protection Act, RCW 19.86 *et seq*.;

COMPLAINT—CLASS ACTION - 11

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

h.    Whether Plaintiff and the Class are entitled to maximum statutory damages, costs, and fees under the Washington Consumer Protection Act;

i.    Whether Plaintiff and the Class are entitled to injunctive relief under the Washington Consumer Protection Act; and

j.    Whether Defendants were negligent in their actions or omissions.

63.    <u>Typicality</u>: Plaintiff's claims are typical of those of other Class and Sub-Class Members because Plaintiff was induced by a third party to cause a withdrawal of funds from Plaintiff's Wells Fargo account to occur through the Wells Fargo/Zelle app. After disputing the unauthorized transactions, Plaintiff was informed by Wells Fargo Bank that the unauthorized transactions would ultimately not be reversed.

64.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of Class and Sub-Class Members. Plaintiff's Counsel are competent and experienced in litigating consumer class actions.

65.    <u>Predominance</u>: Defendants have engaged in a common course of conduct toward Plaintiff, Class Members, and Sub-Class Members, in that Plaintiff, Class and Sub-Class Members were induced into allowing a third party to make unauthorized withdrawals on their Wells Fargo accounts using Zelle. The common issues arising from Defendants' conduct affecting Class and Sub-Class Members set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

66.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class and Sub-Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class and Sub-Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class and Sub-Class Members, which would

COMPLAINT—CLASS ACTION - 12

establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

67.     Defendants have acted on grounds that apply generally to the Class and Sub-Class, so that class certification is appropriate.

68.     Notice: Plaintiff anticipates providing direct notice to the Class and Sub-Class for purposes of class certification, via U.S. Mail and/or email, based upon Defendants' and/or Defendants' agents' records.

## COUNT ONE — VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT ("EFTA"), 15 U.S.C. §§ 1693, *ET SEQ.*

### (On Behalf of Plaintiff and the Class Against Defendants WFC, Wells Fargo Bank and Zelle)

69.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

70.     The Electronic Fund Transfer Act ("EFTA") and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. § 1005.3(a).

71.     The primary objective of the EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

72.     WFC and Wells Fargo Bank are financial institutions. 12 C.F.R. § 1005.2(i).

73.     Zelle is a financial institution, as the applicable code, 12 C.F.R. § 1005.2(i), is interpreted by the Consumer Financial Protection Bureau.[13]

74.     "If a financial institution, within sixty days after having transmitted to a consumer pursuant to [15 U.S.C. § 1693d(a), (c), or (d)] or notification pursuant to [15 U.S.C. § 1693(d)] receives oral or written notice in which the consumer[:] (1) sets forth or otherwise enables the financial institution to identify the name and the account number of the consumer; (2) indicates

---

[13] *Ibid.*

COMPLAINT—CLASS ACTION - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the consumer's belief that the documentation, or, in the case of notification pursuant to [15 U.S.C. § 1693d(b)], the consumer's account, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred," the financial institution is required to investigate the alleged error. 15 U.S.C. § 1693f(a).

75.     After said investigation, the financial institution must determine whether an "error" has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. 15 U.S.C. § 1693f(a).

76.     A financial institution that provisionally recredits the consumer's account for the amount alleged to be in error pending an investigation, however, is afforded forty-five (45) days after receipt of notice of error to investigate. *Id.* § 1693f(c).

77.     Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." *Id*. § 1693f(f).

78.     An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1). Accordingly, Regulation E applies to any P2P or mobile payment transactions that meet the definition of EFT. 12 § C.F.R. 1005.3(b)(1)(v); *id*., Comment 3(b)(1)-1ii.

79.     Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. §1005.2(m).

80.     According to the CFPB, when a third party fraudulently induces a consumer into sharing account access information that is used to initiate an EFT from the consumer's account, that transfer meets Regulation E's definition of an unauthorized EFT.[14]

---

[14] https://www.consumerfinance.gov/compliance/compliance-resources/deposit-accounts-resources/electronic-fund-transfers/electronic-fund-transfers-faqs/  (last visited April 11, 2022).

COMPLAINT—CLASS ACTION - 14

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

81. In particular, Comment 1005.2(m)-3 of Regulation E explains that an unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through robbery or fraud. As such, when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E.[15]

82. Here, Plaintiff and other class members were fraudulently induced by a third-party scammer purporting to be Wells Fargo Bank to share Zelle authorization codes sent from a Wells Fargo Bank account to access information.

83. The third party then used the information obtained from Plaintiff and other class members to make unauthorized EFTs from the bank accounts of Plaintiff and other class members.

84. After the unauthorized EFTs were made, the EFTs appeared on the bank statements of Plaintiffs and other class members.

85. Plaintiff and other class members notified Wells Fargo Bank and WFC of these errors within sixty (60) days of their appearances on the accounts of Plaintiff and other class members.

86. As a direct and proximate result of the conduct of Defendants, Plaintiff and other Class Members were unable to reclaim funds that were taken from their accounts by scammers.

87. Defendants knowingly and willfully concluded that the transfers of funds via Zelle on accounts of Plaintiff and other Class members were not in error when such conclusions could not reasonably have been drawn from the evidence available to the financial institutions at the time of the investigation. 15 U.S.C. § 1693f(e)(2).

---

[15] *Ibid.*

COMPLAINT—CLASS ACTION - 15

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

88.     Defendants intentionally determined that the unauthorized transfer of funds via Zelle on accounts of Plaintiff and other Class members were not in error due to, at least in part, their financial self-interest as a stakeholder in Zelle.

89.     Defendants refuse to reverse or refund funds to Plaintiff and the other Class members.

90.     As such, Plaintiff and other class members are each entitled to (i) actual damages; (ii) treble damages; (iii) the lesser of $500,000.00 or one percent (1%) of the net worth of Wells Fargo and WFC; and (iv) reasonable attorneys' fees and costs. *Id*. §§ 1693f(e)(2), 1693m(a)(2)(B)–(3).

## COUNT TWO — WASHINGTON CONSUMER PROTECTION ACT ("CPA CLAIM"), RCW 19.86

### (On Behalf of Plaintiff and the Sub-Class Against All Defendants)

91.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

92.     Washington prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce. RCW 19.86.20.

93.     Defendants' acts violate the EFTA, as described in Plaintiff's First Cause of Action above.

94.     Defendants' acts or practices constitute unfair or deceptive business practices because, as alleged above, Defendants intentionally declined to reverse or to refund charges on the accounts of Plaintiff and Class Members even though they knew or should have known that said charges were in fact transactions not authorized by Plaintiff or the Class Members, and Defendants are obligated to reverse or refund them pursuant to the EFTA.

95.     Defendants' acts or practices constitute an unfair or deceptive practice, where Defendants failed to adequately investigate the cause of unauthorized transactions because this would reveal the security limitations of the Wells Fargo/Zelle app and result in Defendants'

COMPLAINT—CLASS ACTION - 16

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

liability for unauthorized transfers, which conflicts with WFC and Wells Fargo Bank's financial interests in Zelle. On information and belief, the manner that Wells Fargo Bank investigates, and processes, Zelle-related fraud claims differs from other similar investigations.

96.     Defendants' acts or practices constitute an unfair or deceptive practice where, with knowledge of a widespread scam affecting their customers, Defendants failed to take reasonable steps to adequately warn of known risks and/or dangers associated with the Wells Fargo/Zelle app and to take appropriate steps in response to a known scam involving the app to protect consumers.

97.     Defendants' acts or practices constitute an unfair or deceptive practice where, with knowledge of a widespread scam affecting their customers, Defendants failed to take reasonable steps to develop and implement adequate safety precautions to mitigate against known, rampant Zelle app scams.

98.     Defendants' acts or practices occur in the conduct of trade or commerce.

99.     Defendants' acts or practices affect the public interest because there is a strong likelihood that additional consumers have been or will be injured in exactly the same fashion.

100.    Through their acts or practices, Defendants save themselves millions of dollars which should have been credited to Plaintiff and the Washington Sub-Class from their refusal to reverse or refund the unauthorized transactions.

101.    Plaintiff and the Washington Sub-Class are injured by Defendants' acts or practices by the failure to reverse or refund funds and to comply with Regulation E.

102.    Pursuant to the CPA, Plaintiff and the Washington Sub-Class are entitled to preliminary and permanent injunctive relief that Defendants must comply with Regulation E.

103.    Pursuant to the CPA, Plaintiff and the Washington Sub-Class are entitled to preliminary and permanent injunctive relief, and they seek an order requiring Defendants to cease their unfair and unlawful practice of failing to divulge to consumers and putative class

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

members their unfair, anti-competitive business practices of profiting from Zelle at consumers' expense.

104.    Plaintiff and the Washington Sub-Class are also entitled to restitution, refund of funds unfairly obtained by Defendants, disgorgement, as well as all costs, funds, and fees available at law to remedy with this unfair, anti-competitive acts or practices.

## COUNT THREE — NEGLIGENCE

**(On Behalf of Plaintiff, the Class and the Sub-Class Against All Defendants)**

105.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

106.    Wells Fargo Bank and WFC owed Plaintiff and the Class at least a duty to take reasonable steps to safeguard customer financial information and protect their financial accounts from malicious third parties, to adequately warn of known risks and/or dangers associated with the Wells Fargo/Zelle app, and to properly investigate disputed transactions initiated and consummated through the Wells Fargo/Zelle app.

107.    Zelle owed Plaintiff and the Class at least a duty to take reasonable steps to adequately warn of known risks and/or dangers associated with the Wells Fargo/Zelle app, and to take appropriate steps in response to a known scam involving the app to protect consumers from malicious third parties. Zelle breached its duty by not taking steps to prohibit or restrict such practices.

108.    Defendants breached their obligations to Plaintiff and Class Members and were otherwise negligent and/or reckless by at least:

        a.      Failing to maintain adequate data security measures to prevent or reduce the risk of disclosure of the names, phone numbers, and bank affiliation of Plaintiff and the Class to malicious third parties;

        b.      Failing to adequately protect the private information of Plaintiff and the Class;

COMPLAINT—CLASS ACTION - 18

c. Failing to properly warn Plaintiff and the Class of the risks and/or dangers associated with use of the Wells Fargo/Zelle app;

d. Failing to take appropriate steps to avoid unauthorized transactions through the Wells Fargo/Zelle app in response to known scams and continuing with business as normal;

e. Failing to adequately investigate the unauthorized transactions made on the accounts of Plaintiff and the Class using the Zelle payment platform;

f. Failing to implement appropriate and sufficient safeguards against scams of the nature alleged in the Complaint in light of the knowledge that those scams have been rampant across the country;

g. Permitting scammers to use Zelle's member banks to siphon funds from Plaintiff and the Class's accounts using the Zelle payment platform;

h. Failing to reverse or refund unauthorized transactions following disputes of Plaintiff and the Class despite knowledge that said transactions were unauthorized as part of a scam that is well-known to Defendants; and

i. Failing to permanently reverse or refund unauthorized transactions upon a sufficient showing by Plaintiff and the Class that said transactions were unauthorized.

109. As a direct and proximate result of Defendants' breach, Plaintiff and Class Members lost funds from their Wells Fargo Bank accounts.

110. Accordingly, Plaintiff and Class members are entitled to damages for their continuing and increased risk of fraud and their loss of money.

**COUNT FOUR — UNJUST ENRICHMENT**

**(ON BEHALF OF PLAINTIFF, THE CLASS AND THE SUB-CLASS AGAINST ALL DEFENDANTS)**

111. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

112. Defendants have been conferred the benefit of keeping funds that Defendants are otherwise obligated to replace for Plaintiff and Class Members.

113. Defendants know and appreciate this benefit.

COMPLAINT—CLASS ACTION - 19

114. It is inequitable for Defendants to retain the benefit of keeping these funds when Defendants know that as federally chartered financial institutions, they are obligated to comply with Regulation E and credit Plaintiff and putative class members accounts for the amounts taken.

115. Plaintiffs are entitled to restitution for the unjust enrichment to Defendants.

116. Plaintiffs are entitled to disgorgement of the funds unjustly retained by Defendants.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, and each of them, as follows:

1. Class certification of this action;

2. Appointment of Plaintiff as Class Representative;

3. Appointment of Plaintiff's attorneys as Class Counsel;

4. An award of actual damages, in an amount to be determined at trial;

5. An award of treble damages against Wells Fargo Bank, WFC, and Zelle pursuant to the EFTA;

6. An award of the maximum allowable treble damages, $25,000, against Wells Fargo Bank, WFC, and Zelle pursuant to the CPA for each CPA violation;

7. Injunctive relief pursuant to the CPA and other equitable relief against Defendants as necessary to protect the interests of Plaintiff and other Class Members, and an order prohibiting Defendants from engaging in unlawful and/or unfair acts described above, including public injunctive relief;

8. Disgorgement;

9. An order of restitution from Defendants for unjust enrichment;

10. Declaratory relief of an order declaring Defendants' conduct as unlawful;

11. Costs of Suit;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

12. Pre- and post-judgment interest;

13. An award of reasonable attorneys' fees; and

14. Any other relief the Court may deem just and proper, including interest.

## VIII. DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

RESPECTFULLY SUBMITTED this 1st day of June 2022.

KELLER ROHRBACK L.L.P.

By: *s/ Laura R. Gerber*
By: *s/ Nathan L. Nanfelt*

Laura R. Gerber, WSBA No. 34981
Nathan L. Nanfelt, WSBA No. 45273
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Phone: (206) 623-1900
lgerber@kellerrohrback.com
nnanfelt@kellerrohrback.com

***Attorneys for Plaintiff***

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384